UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

THORSTEN BUSCH,

                              Plaintiff,

                 -against-

AIRBUS S.A.S. and AIRBUS AMERICAS, INC.,:

                       Defendants.

------------------------------------------------------------- X

|  |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 3/13/2026 |

22-CV-06967 (VEC)

OPINION & ORDER
FILED UNDER SEAL

VALERIE CAPRONI, District Judge:

Plaintiff Thorsten Busch, a former pilot, sued Airbus, alleging that the "bleed air" pressurizing system used in the Airbus A320 commercial aircraft exposed him to chemicals that caused him to suffer various physical and neurological injuries. Defendants Airbus S.A.S. and Airbus Americas, Inc., are seeking to exclude the opinions of six of Plaintiff's proffered expert witnesses.[1]  Defs.' Mots. to Exclude Ops., Dkts. 111–115.

## FACTUAL BACKGROUND

Plaintiff became a pilot in 1999 and started flying for JetBlue Airways Corporation ("JetBlue") in 2011. Letter, Dkt. 141 at 1; Compl., Dkt. 3 at ¶¶ 7–8.  Plaintiff alleges that he was injured while piloting commercial flights for JetBlue in 2019 and in 2022, during what he terms "fume events." *Id.* at ¶ 10.  Plaintiff describes a fume event as "when noxious gas, smoke, or vapor accumulates in and/or travels into the cabin of an aircraft including the cockpit." *Id.* at ¶ 65.  Plaintiff asserts that fume events "sometimes produce distinctive odors," including a "dirty socks" smell. *Id.* at ¶ 67.

---

[1]      Defendant UMB Bank, N.A. was voluntarily dismissed from the case.  Stip. of Dismissal Without Prejudice as to UMB Bank, N.A., Dkt. 51.

Plaintiff alleges that these particular fume events were due to the bleed air system on the Airbus A320, which is manufactured and maintained by Defendants. *Id.* at ¶ 44. In a bleed air system, high pressure air is "bled" from the engine's compressor and auxiliary power unit ("APU") to various locations within the aircraft. *Id.* at ¶¶ 32–37. Air contamination allegedly occurs when substances such as jet engine oil and hydraulic fluid make their way into the cabin due to these systems. *Id.* at ¶¶ 38, 41. Plaintiff is particularly concerned with the bleed of tricresyl phosphates, which are anti-wearing agents designed to reduce friction; N-phenyl-Lnaphthylamine; and carbon monoxide. *Id.* at ¶ 74. Plaintiff asserts that the Airbus A320 experiences additional air contamination due to the location of the APU air inlet, which is at the "bottom of the rear part of the aircraft" (as opposed to on the "right-hand side of the rear part of the aircraft," like "most" others). Pl.'s Reply Mem. of Law in Opp'n re: Mot. for Summ. J. ("Pl.'s Opp'n to Summ. J."), Dkt. 123 at 26; Pl.'s Reply Mem. of Law in Opp'n re: Mot. to Exclude Ops. ("Pl.'s Opp'n"), Dkt. 124 at 22.

On August 27, 2019, Plaintiff was piloting an A320, and, upon landing, he turned on the air conditioning and, in turn, the APU, and he smelled a "dirty sock" odor. Compl., Dkt. 3 at ¶¶ 81–83. Within twenty to thirty minutes, Plaintiff reported difficulty speaking coherently and feelings of intoxication, dizziness, and confusion. *Id.* at ¶¶ 84–85. He was taken to the local hospital and examined. *Id.* at ¶¶ 86, 88. His symptoms persisted over time. *Id.* at ¶ 87.

Due to Plaintiff's physical and neurological condition, the certification that he is medically fit to fly, which is required of all pilots by the Federal Aviation Administration ("FAA"), was revoked in November 2020. *Id.* at ¶ 92. He sought treatment and was able to return to his role as a JetBlue pilot in December 2021. *Id.* at ¶¶ 93–94.

Then, on April 26, 2022, Plaintiff was on another Airbus A320, this time "deadheading," i.e., flying as a non-working crew member to pick up another aircraft. *Id.* at ¶ 96. The following

day Plaintiff began to experience vision issues, tremors, headaches, and dizziness, for which he sought medical treatment. *Id.* at ¶¶ 97–100. Plaintiff has been unable to return to work as a pilot due to ongoing symptoms. *Id.* at ¶ 101.

## PROCEDURAL HISTORY

Plaintiff alleges that Defendants were negligent (Count I); breached express and implied warranties (Count II); and are subject to strict products liability (Count III). Compl., Dkt. 3 at 15–19. He alleges that he is entitled to punitive damages (Count IV). *Id.* at 19–20. Specifically, Plaintiff asserts that Defendants breached their duty to exercise reasonable care in the design, manufacturing, and sale of Airbus A320 planes; failed to warn purchasers (i.e., JetBlue) and users (i.e., crew members and passengers) about the dangers of cabin air contamination; and failed to implement a reasonable alternative design or modifications to prevent or mitigate cabin air contamination. *Id.* at 15–17.

The case was filed in August 2022. *Id.* Fact and expert discovery are now complete. *See* Order, Dkt. 91 at 1 (fact discovery concluded November 15, 2024); Order, Dkt. 103 at 1 (expert discovery concluded April 30, 2025); *see also* Letter, Dkt. 141 at 2 (confirming).

On May 30, 2025, Defendants moved to exclude the opinions of certain of Plaintiff's proffered expert witnesses: (1) Judith Anderson, an industrial hygienist; (2) Dr. Charles Vyvyan Howard, a toxicopathologist; (3) Dr. Susan Michaelis, a now-deceased air safety and accident investigator; (4) Dr. Dieter Scholz, an aeronautical engineer; and (5) Drs. Zeke McKinney and Jill Schultz, medical doctors. Defs.' Mots. to Exclude Ops., Dkts. 111–115. On June 27, 2025, Plaintiff filed an omnibus Opposition to Defendants' Motions to Exclude. Pl.'s Opp'n; Michaela M. Weaver's Decl. in Opp'n re: Mot. to Exclude Ops., Dkt. 128. Defendants replied on July 7,

2025.  Defs.' Replies in Supp. of Mots. to Exclude Ops., Dkts. 129–133.[2]  This case was transferred to the Undersigned on November 5, 2025.

## DISCUSSION

Defendants allege that Plaintiff's proffered experts should be excluded pursuant to Fed. R. Evid. 702.  Defs.' Mots. to Exclude Ops., Dkts. 111–115.  Plaintiff contends that his experts' opinions are admissible under Rule 702 and that Defendants' arguments go to the weight of the evidence, not its admissibility.  *See, e.g.*, Pl.'s Opp'n at 7–8.

### 1. Threshold Matters

A.  Plaintiff's Memorandum of Law in Opposition to Defendants' Motions

Defendants complain that Plaintiff's Opposition does not meaningfully engage with Defendants' arguments.  *See, e.g.*, Defs.' Reply Mem. of Law in Opp'n re: Mot. to Exclude Ops. of Dr. Zeke McKinney & Dr. Jill Schultz ("McKinney/Schultz Reply"), Dkt. 133 at 2.  The Court agrees.  Plaintiff does not address, for example, Defendants' assertion that Dr. Scholz's report is merely the manuscript of a book he wrote.  Beyond not being responsive to Defendants' arguments, Plaintiff's Opposition contains numerous typographical errors and gives the appearance that it may have been copied from a different brief.  *See, e.g.,* Defs.' Reply Mem. of Law in Supp. re: Mot. to Exclude Ops. of Dr. Howard ("Howard Reply"), Dkt. 130 at 9; Pl.'s Opp'n at 1, 32 (using female pronouns to refer to Plaintiff, who uses male pronouns).  The Court takes no issue with the fact that Plaintiff submitted an omnibus response.  The Court does,

---

[2]    Defendants also moved for summary judgment.  Defs.' Mot. for Summ. J., Dkt. 116; Defs.' Mem. of Law in Supp. re: Mot. to Exclude Ops., Dkt. 117; Statement of Undisputed Facts in Supp. re: Mot. for Summ. J., Dkt. 118; and Christopher M. Odell's Decl. in Supp. re: Mot. to Exclude Ops., Dkt. 119.  The Court denied Defendants' Motion for Summ. J. without prejudice.  Order, Dkt. 142.

however, object to the fact that Plaintiff's Opposition does not respond in a coherent way to

Defendants' arguments and is generally messy and meandering.[3]

### B. Scope of the Record

*Vuksanovich v. Airbus Americas, Inc.*, No. 21-CV-3454 (S.D.N.Y. 2021), is not a related

case, but the plaintiff in that case raised similar issues and submitted similar evidence. Letter,

Dkt. 141 at 5 (citing August 19, 2022, Docket Entry). That case was brought by a JetBlue flight

attendant who worked aboard Airbus's A320 aircraft, and she proffered four of the experts being

challenged by Defendants. *Vuksanovich*, No. 21-CV-3454, Dkts. 1, 178-1, 189–192 (complaint,

expert disclosures, and motions to preclude the opinions of Dr. Michaelis, Ms. Anderson,

Dr. Howard, and Dr. Scholz). The parties agreed that the reports and deposition testimony given

by those experts in *Vuksanovich* may also be cited and discussed in this case. Letter, Dkt. 141 at

5.[4]

### 2. Legal Standards

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.

It provides that a person "qualified as an expert by knowledge, skill, experience, training, or

education may" offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[3]    In deciding Defendants' Motions, the Court considered the arguments made in Plaintiff's Opposition to Defendants' Motion for Summary Judgment. *See* Pl.'s Opp'n at 23 n.5 (incorporating arguments); *see also* Pl.'s Opp'n to Summ. J.

[4]    Summary judgment was granted in favor of Defendants in *Vuksanovich* based on the statute of limitations (and the motions to exclude experts' testimony were thus denied as moot); the parties have represented that there is no statute of limitations issue in this case. *Vuksanovich*, No. 21-CV-3454, Dkt. 233; Letter, Dkt. 141 at 5 n.2.

The proffering party bears the burden of establishing admissibility under Rule 702. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). All of the admissibility requirements must be met by a preponderance of the evidence.[5] *See Bourjaily v. United States*, 483 U.S. 171 (1987). The district court serves as the "ultimate gatekeeper" as to expert testimony. *Williams*, 506 F.3d at 160. Rule 702 tasks the district court judge with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The initial threshold question is whether the expert's opinion is relevant. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Proffered testimony is not helpful to the jury if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). An expert's opinion will be precluded if it "undertakes to tell the jury what result to reach." *Id.* (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). "While an expert may opine on an issue of fact within the jury's province, an expert may not give testimony stating ultimate

---

[5] The parties disagree on the applicable legal standards. Plaintiff cites "lenient standards for expert admissibility." *See, e.g.*, Pl.'s Opp'n at 11. Plaintiff argues that Defendants' objections raise questions "more properly left to the jury." *Id.* at 12. Defendants argue that Plaintiff relies on "an outdated version of Federal Rule of Evidence 702," Howard Reply at 1, and take issue with Plaintiff's argument that the pertinent standard "favors admissibility," *id.* at 2. Defendants also rebut Plaintiff's insistence that issues with "experts' qualifications, methodologies, or application of those methods . . . go to the weight of the testimony, not its admissibility." *Id.* Defendants point out that the 2023 Amendment to Rule 702 clarified that there is no presumption of admissibility. *Id.* Defendants also insist that the 2023 Amendment clarified what are questions of weight versus admissibility. *Id.* at 2–3.

There is some merit to both parties' assertions. Rule 702 does embody a "liberal" and "more permissive" standard of admissibility. *Nimely v. City of New York*, 414 F.3d 381, 395–396 (2d Cir. 2005). Plaintiff, however, as the proponent of this evidence, still has the burden of proving, by a preponderance of the evidence, that the proffered testimony is admissible.

legal conclusions based on those facts." *Snyder v. Wells Fargo Bank, N.A.*, 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (cleaned up).

The next question is whether the expert's opinion is reliable. *Amorgianos*, 303 F.3d at 265 (quoting *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001)). The Court considers, *inter alia*, whether (1) "the testimony is grounded on sufficient facts or data," (2) "the testimony 'is the product of reliable principles and methods,'" and (3) "the witness has applied the principles and methods reliably to the facts of the case." *See id.* (citing Fed. R. Evid. 702). "[I]t is critical that an expert's analysis be reliable at every step." *Id.* at 267. The goal is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony must also follow other rules of evidence, such as Fed. R. Evid. 403, allowing exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In sum, proffered expert testimony must be competent, non-conclusory, relevant, and reliable, especially in cases involving complex questions of design. *Guarascio v. Drake Assoc. Inc.*, 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008). The Supreme Court has cautioned, however, that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

In terms of disclosure, Rule 26(a) requires parties to disclose the experts who are expected to testify and to provide detailed reports containing the substance of the experts' opinions and the bases for those opinions. Fed. R. Civ. P. 26(a). Expert reports must sufficiently

convey opinions so that the opposing party can prepare for cross-examination and retain competing experts if needed. *Id.* Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)*; see also Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 395–396 (S.D.N.Y. 2005) ("The exclusion of undisclosed information is automatic and the non-disclosing party has the burden to demonstrate that the failure to disclose was substantially justified or that the failure was harmless.").

### 3. Motion to Exclude the Opinions of Judith Anderson

Judith Anderson is an aviation industrial hygienist, i.e., a workplace health and safety expert who focuses on the safety of flight crews. Defs.' Mot. to Exclude Ops. of Judith Anderson ("Anderson Mot."), Dkt. 111-1 at 2; Pl.'s Opp'n at 9. Industrial hygienists are trained to identify and mitigate workplace hazards, such as exposures that may cause injury. Ms. Anderson has worked for the Association of Flight Attendants, a labor union representing 50,000 flight crew members, for approximately 25 years. Anderson Mot. at 2; Pl.'s Opp'n at 9. Ms. Anderson submitted a 200-plus page report discussing air contamination and design alternatives. Report of Judith Anderson ("Anderson Report"), Dkt. 119-2. Her opinions appear in a list numbered 1 through 18. Anderson Report at § 11-1, ECF pg. 164–168.

The crux of Defendants' objections to Ms. Anderson is that her report is not an expert report but an improper narration of Plaintiff's entire case, i.e., the type of information that an attorney would include in a closing statement at trial. Anderson Mot. at 4 (citing *Alto v. Sun Pharm. Indus., Inc.*, 2021 WL 4803582, at *6 (S.D.N.Y. Oct. 13, 2021)). They assert that she is an advocate, not an expert. Pl.'s Reply Mem. of Law in Opp'n re: Mot. to Exclude Ops. of Judith Anderson ("Anderson Reply"), Dkt. 129 at 2. Defendants allege that there are sections of

8

Ms. Anderson's report (Sections 3–8 and 10) about which she lacks knowledge.[6]  Anderson Mot. at 5–14.  Defendants also assert that she is unqualified to offer opinions on causation, defective design, alternative designs, and aircraft maintenance.  *Id.* at 14–19, 22.  Defendants point out that she does not offer specific details about the flights on which Plaintiff was allegedly injured.  *Id.* at 3.  Defendants also take issue with Ms. Anderson's lack of (1) testing of any alleged design defects and (2) analysis of the economic or technical feasibility of her proposed alternative design.  *Id.* at 16, 20–22.  Finally, Defendants argue that Ms. Anderson offers legal conclusions. *Id.* at 23.

Plaintiff discusses Ms. Anderson's schooling, experience, and awards.  Pl.'s Opp'n at 9–10.  Plaintiff argues that Ms. Anderson can testify to alternative designs, given her exposure to various airlines through her work, and summarize "largely (if not entirely) admissible" "information from scholarly, industry, and government publications, and of Airbus's response to fume events."  *Id.* at 26.  Plaintiff asserts that Ms. Anderson will not offer an opinion on causation and will not reach legal conclusions.  *Id.* at 24, 27 n.7.  Defendants respond that all Plaintiff has done is define a "hierarchy of controls" (a framework to prioritize control measures to mitigate a hazard) and to insist that she will offer a few opinions within the area of industrial hygiene, without specifying what those opinions are.  Anderson Reply at 2.

A proper expert report is not just a compilation of many pages loosely addressing a topic. Given Ms. Anderson's education and professional experience,[7] with a proper report, she may

---

[6]    Section Three of her report discusses aircraft design features, Section Four discusses Airbus's maintenance responses, Section Five addresses Plaintiff's experiences, Section Six contains publicly available information such as safety reports, Section Seven contains information on health impacts, Section Eight catalogues regulatory standards, and Section Ten addresses documents produced by Airbus in discovery.  Anderson Mot. at 5–14; *see also* Anderson Report.

[7]    Ms. Anderson has a bachelor's degree in chemistry and biopsychology and a master's degree in industrial hygiene.  Pl.'s Opp'n at 9.  She has been certified as an industrial hygienist since 1999.  *Id.*  Ms. Anderson serves on multiple professional standards and regulatory committees with a specialization in cabin air quality.  *Id.*

have been approved to testify to airplane health and safety conditions.  For example, she may have otherwise been able to discuss Airbus's risk assessment and classification of fume events and what actions, in Ms. Anderson's view, those findings should have dictated.  Those opinions, however, if they appear, are not obvious in her report or are hopelessly commingled with inadmissible opinions or improper narrative of Plaintiff's case.

It is not the Court's job to laboriously sift through Ms. Anderson's report to separate her potentially admissible industrial hygiene opinions from her improper narration of Plaintiff's case and inadmissible opinions that are outside her sphere of expertise.  *See Kenall Mfg. Co. v. H.E. Williams, Inc.*, No. 09-CV-1284, 2012 WL 4434370, at *4 (N.D. Ill. Sept. 24, 2012) (explaining that judges are not required to "play archaeologist with the record" or "like pigs, hunt[] for truffles buried in" the record, as that is an advocate's job, and "if a judge undertakes the role, the adversary system is adversely affected").  To render Ms. Anderson's report admissible, the Court would essentially need to line-edit it, wading into the spheres appropriately assigned to the expert and Plaintiff's counsel.

Here, in the interest of judicial economy and in its authority as the gatekeeper, this Court exercises its discretion to exclude Ms. Anderson's report in full.  *See In re Rosuvastatin Calcium Pat. Litig.*, No. 07-CV-359 (JJF) (LPS), 2009 WL 4800702, at *9 (D. Del. Dec. 11, 2009), *report and recommendation adopted*, No. 07-CV-805 (JJF), 2010 WL 661599 (D. Del. Feb. 19, 2010) ("While it might be possible to parse through [this expert's] 98–paragraph report and find something not excludable, this is not a task the Court should have to undertake in the first instance.  I will exercise my discretion and exclude [the expert's] testimony in its entirety."); *see also Willis v. Allstate Ins. Co.*, No. 2:13-CV-60 (KS) (MTP), 2014 WL 4804396, at *3 (S.D. Miss. Sept. 26, 2014) ("The Court declines to sift through [the expert's] report and separate the

admissible statements from the inadmissible ones."). For the foregoing reasons, Defendants'

Motion to Exclude the Opinions of Judith Anderson is GRANTED.

### 4. Motion to Exclude the Opinions of Dr. Vyvyan Howard

Dr. Vyvyan Howard, also known as Dr. Charles Vyvyan Howard, is a toxicopathologist.

He is an Emeritus Professor of Bioimaging at the University of Ulster in Northern Ireland.

Report of Dr. Howard ("Howard Report"), Dkt. 119-6 at 1. Dr. Howard's report cites various

studies and endorses Dr. McKinney's diagnosis that Plaintiff suffers from "aerotoxic

syndrome."[8] Defs.' Mot. to Exclude Ops. of Dr. Howard ("Howard Mot."), Dkt. 112-1 at 22–23.

Dr. Howard's opinions appear in Section XIII of his report. Howard Report at 13–14.

Defendants move to preclude Dr. Howard from testifying as to general causation because

his opinion and methodology are not clearly stated in his report.[9] Howard Mot. at 12–13.

Defendants assert that Dr. Howard's general causation opinion is unreliable because: he cherry-

picked studies and, in doing so, ignored "the only applicable epidemiological study"; and he

failed to identify a specific chemical or threshold dose of organophosphates or other agents that

can cause harm. Howard Mot. at 14–21. Defendants also move to preclude Dr. Howard's

opinions on specific causation; Defendants argue that those opinions are not admissible absent

proof of general causation and have no reliable basis. *Id.* at 21–22. Finally, Defendants argue

that Dr. Howard's endorsement of Dr. McKinney's diagnosis is not admissible. *Id.* at 22–25.

Plaintiff asserts that Dr. Howard "already participated in a concerted scholarly effort

conclusively establishing general causation," via application of the so-called Bradford Hill

---

[8]      Dr. McKinney is one of Plaintiff's treating physicians, discussed *infra* at Section 7.

[9]      General causation addresses whether a particular substance can cause a particular injury or condition in the general population. Specific causation addresses whether a particular substance caused the individual's specific injury or condition.

factors, which address causation.  Pl.'s Opp'n at 28–29.  Plaintiff cites two peer-reviewed papers

that Dr. Howard co-authored for this proposition.[10]  *Id.*  Thus, Plaintiff argues, Dr. Howard

focused his report in this case on specific causation and did so adequately.  *Id.* (quoting *B.T.N. ex*

*rel. Netti v. Auburn Enlarged City Sch. Dist.*, 45 A.D.3d 1339, 1340 (4th Dep't 2007) (stating

that there is no requirement to determine precise exposure levels and approving the use of a

differential diagnosis)).  Plaintiff argues that Dr. Howard performed a differential diagnosis, i.e.,

he ruled out the potential causes of illness until one remained, which is an acceptable

methodology.  *Id.*  Plaintiff insists that Dr. Howard's lack of knowledge concerning Plaintiff's

particular vulnerability is a topic for cross-examination but not a basis for exclusion.  *Id.* at 30.

Finally, Plaintiff argues that Defendants cannot succeed on their argument that "Dr. Howard

considered two [*sic*] few alternative causes in his differential diagnosis."  *Id.*

Dr. Howard cannot testify to general causation because his report neither discloses an

opinion on general causation nor provides a supporting methodology.  The Bradford Hill

assessment that Plaintiff lauds in his Opposition was disclosed in neither Dr. Howard's report

nor during his deposition.  Howard Reply at 3–4.  One of the two studies on which Plaintiff

hangs his hat was mentioned in passing, and one was not mentioned at all.[11]  *Id.*; *see also*

---

[10]      For ease, the Court will refer to those papers as the Burdon, et al., 2023 Study and the Howard, Michaelis, Watterson, 2017 Study.  *See* Burdon, et al*., Health consequences of exposure to aircraft contaminated air and fume events: a narrative review and medical protocol for the investigation of exposed aircrew and passengers*, 22 ENVIRONMENTAL HEALTH 43 (2023), available at https://ehjournal.biomedcentral.com/articles/10.1186/s12940-023-00987-8; Howard, Michaelis, Watterson, *The Aetiology of 'Aerotoxic Syndrome' - A Toxico- Pathological Viewpoint*, 1 OPEN ACC J TOXICOL 1, 1–3 (2017), available at https://juniperpublishers.com/oajt/pdf/OAJT.MS.ID.555575.pdf.

[11]      Plaintiff insists that Dr. Howard cites these articles in his report and "their application of the Bradford Hill factors is fully addressed in the arguments in [Pl.'s Opp'n to Summ. J.]."  Pl.'s Opp'n at 29 n.8.  That is insufficient. The Burdon, et al., 2023 Study is referenced briefly in Dr. Howard's report and appears in the references section. *See* Howard Report at 8, 14.  The Howard, Michaelis, Watterson, 2017 Study does not appear in the report at all. Discussion of the Bradford Hill factors in Plaintiff's Opposition to Defendants' Motion for Summary Judgment cannot cure the deficiencies in Dr. Howard's report.  Having an attorney include the Bradford Hill factors, even discussing each of the factors individually, in Plaintiff's Opposition to Defendants' Motion for Summary Judgment is irrelevant.  The Court does not need to consider whether a Bradford Hill analysis would be a reliable methodology

Howard Report at 8, 14.  Dr. Howard's report mentions general causation, but it does not explain a methodology for determining causation nor does it explain any opinion he wishes to give regarding general causation.  As a result, he may not testify to general causation and, because general causation has not been established, he may not testify to specific causation either.  *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 436 (S.D.N.Y. 2016) (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 578 (S.D.N.Y. 2004) (excluding expert testimony on specific causation due to the lack of admissible expert testimony on general causation)).

Even without those barriers to admissibility, Dr. Howard's methodology raises questions. He did not measure Plaintiff's exposure level to organophosphates or other agents; he only estimated it based on data like his flight hours.  Howard Report at Section XII ("Mr. Busch's Exposure - Dose Estimation"); *see Bourne ex rel. Bourne v. E.I. Dupont de Nemours & Co.*, 189 F. Supp. 2d 482, 486, 499 (S.D.W. Va. 2002), *aff'd sub nom. Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co.*, 85 F. App'x 964 (4th Cir. 2004) (excluding Dr. Howard's opinions, referencing the fact that he estimated exposure based on the plaintiff's representations without conducting any testing or measurements).

Given insufficient disclosures and the lack of a discernable, reliable methodology, Dr. Howard's testimony must be excluded in its entirety.  For the foregoing reasons, Defendants' Motion to Exclude the Opinions of Dr. Charles Howard is GRANTED.

**5.  Motion to Exclude the Opinions of Dr. Susan Michaelis**

Dr. Susan Michaelis was a former pilot with expertise in aviation safety and published research on contaminated air.  *See* Compl., Dkt. 3 at ¶ 52.  She studied and worked in safety

---

to use in this case because Dr. Howard did not — as far as his report reflects — utilize that methodology to reach his opinions.  *See id.* at 3–4.

science and health and flight safety.  Defs.' Mot. to Exclude Ops. of Dr. Michaelis, Dkt. 113-1 at 3; Pl.'s Opp'n at 7.  Her report is more than 300 pages long.  Report of Dr. Michaelis ("Michaelis Report"), Dkt. 119-9.  Her opinions are enumerated in a list numbered 1 through 67. *Id.* at 238–241.

On December 5, 2025, the parties informed the Court that Dr. Michaelis had died after her expert disclosure was served.  Letter, Dkt. 141 at 2.  The parties agreed (1) to conditions for substituting a new expert for trial to support the opinions in Dr. Michaelis's report and (2) that, substitution aside, "the pending motions [would] go forward as currently briefed."  *Id.*  Plaintiff represented that he intended to file a motion to substitute a new expert in place of Dr. Michaelis "within the next week."  *Id.*  That week, ending December 12, 2025, came and went, and no motion to substitute has been filed to date.

Despite the parties' agreement, the Court cannot issue an opinion on a question that is not currently before it.  *See Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.").  This Motion is moot; Dr. Michaelis is dead, and therefore will not be a witness, and Plaintiff has not moved in a timely way to substitute a comparable expert.

There is no hard and fast rule regarding substitution after an expert's death, but a party is expected to act with reasonable diligence in seeking substitution.  This is intended to ensure that the Court can proceed efficiently and that Defendants are not unfairly prejudiced.  Here, Dr. Michaelis died in July 2025, Plaintiff announced his intent to substitute an expert "within the next week" in December 2025, and it is now March 2026.  Letter, Dkt. 141 at 2.  Plaintiff has not acted promptly.  For the foregoing reasons, Defendants' Motion to Exclude the Opinions of Dr. Susan Michaelis is DENIED as moot.

**6. Motion to Exclude the Opinions of Dr. Dieter Scholz**

Dr. Scholz is an aeronautical engineer. Defs.' Mot. to Exclude Ops. of Dieter Scholz ("Scholz Mot."), Dkt. 114-1 at 3. He teaches at Hamburg University of Applied Sciences in Germany and holds a doctorate degree in aircraft systems. *Id.* He was previously a pilot with more than 700 flight hours and was an engineer for Airbus for approximately five years. Report of Dr. Dieter Scholz ("Scholz Report"), Dkt. 119-12 at 5. He now works as an independent consultant in the aeronautical industry. Pl.'s Opp'n at 6.

Defendants note that Dr. Scholz's "report" is a copy of his nearly 500-page book manuscript. Scholz Mot. at 1; Dr. Scholz *Busch* Dep. Tr., Dkt. 119-13 at 17. The manuscript covers different types of aircraft and hazards that go beyond the case at hand. Scholz Mot. at 4. Chapter 13 of Dr. Scholz's "report" is about two and half pages and contains a case-specific summary of his opinions, numbered 1 through 16. Scholz Report at 383–385; Dr. Scholz *Busch* Dep. Tr., Dkt. 119-13 at 35.

Defendants argue that Dr. Scholz's report is irrelevant and should be excluded in its entirety under Fed. R. Evid. 402 and 403. Scholz Mot. at 8–11. Alternatively, Defendants assert that Dr. Scholz should not be allowed to testify regarding design defects because any design defect opinions that he has are not connected to the facts of this case. *Id.* at 11–21. Defendants also argue that Dr. Scholz failed to establish the technical or economic feasibility of alternative designs or that his alternative designs would have prevented injury (or, more broadly, that they are within Defendants' control). *Id.* at 21–24. Finally, Defendants argue that Dr. Scholz is not qualified to offer opinions beyond aircraft engineering on, say, law or epidemiology, and he cannot opine on Defendants' knowledge or introduce inadmissible hearsay. *Id.* at 24–25.

Plaintiff characterizes Defendants' objections to Dr. Scholz's "lack of specialization in a given area or lack of knowledge about specific facts during a deposition" as "quibbles." Pl.'s

15

Opp'n at 11.  Plaintiff argues that Dr. Scholz's opinions regarding the design defect and alternative designs are admissible.  *Id.* at 10–11.  He asserts that Dr. Scholz's opinions speak to substantial likelihood of harm and feasibility of designing the product in a safer manner (and other experts will weigh in on the design defect as a substantial factor in Plaintiff's injuries).  *Id.* at 13, 13 n.3.  Plaintiff argues that no testing is necessary under the law.  *Id.* at 13–16 (citing *Jinn v. Sig Sauer, Inc.*, 2023 WL 2919558, at *15 (S.D.N.Y. Apr. 12, 2023)).  Plaintiff takes issue with Defendants' characterization of Dr. Scholz's alternative designs as "hypothetical modifications," noting that one alternative is currently in use on the Boeing 787.  *Id.* at 18; Scholz Mot. at 22.  Defendants recognize that one design is available on the Boeing 787 but question its certification and feasibility for use in the A320 aircraft — this is where Defendants argue Dr. Scholz's opinions veer into the hypothetical.  Scholz Mot. at 22.  Plaintiff also argues that Dr. Scholz should be able to testify regarding the health risks associated with cabin air quality and historical responses to fume events.  Pl.'s Opp'n at 19–21.

Plaintiff has the burden of proving relevance and reliability.  Dr. Scholz's expert report, to the extent that it can even be called that, and Plaintiff's unresponsive Opposition to Defendants' Motion do not carry that burden.  Dr. Scholz had the opportunity when preparing his report to ensure that it was appropriately tailored to this case.  He did not.  Plaintiff also had the chance in his Opposition to address the specific objections put forth by Defendants.  He did not. While Plaintiff specifies categories of information as to which Dr. Scholz should be able to offer opinions, he does so at a high level and divorced from Dr. Scholz's actual report.[12]  *Id.* at 12–21.

---

[12]    Certain of Dr. Schulz's opinions seem to be within his expertise.  For example, he opines that the bleed system in the Airbus A320 creates an unreasonable risk that people on the airplane will be exposed to jet engine oil decomposition products.  Scholz Report at 384 (opinion 9).  The problem with the report is that Dr. Scholz essentially gave Defendants a pile of hay (his book manuscript) with instructions that they should just dive in to find the basis for that opinion.  That is simply not how expert reports are required to be organized.

16

Submitting a manuscript in place of a report, far from carrying Plaintiff's burden, imposes a burden on Defendants and the Court to ascertain to what opinions Dr. Scholz will actually testify and the bases for those opinions.  While the Court is confident it was more convenient for Dr. Scholz to submit pre-existing work product in its entirety, that approach obscured what in the "report" is important.[13]  While experts certainly may write books on topics of their expertise, submitting such a book as an "expert report" without appropriate tailoring is an unacceptable practice.  An expert report and a book may be similar, but an expert report cannot contain irrelevant and potentially prejudicial material and must specifically link opinions to rationale — requirements generally not levied by book publishers.

It is not Defendants' or the Court's burden to wade through the report and determine what is relevant and reliable; that is the job of Dr. Scholz and Plaintiff, and that job has not been done here.  Dr. Scholz's opinion must be excluded as a result.  For the foregoing reasons, Defendants' Motion to Exclude the Opinions of Dr. Dieter Scholz is GRANTED.

### 7.  Motion to Exclude the Opinions of Dr. Zeke McKinney and Dr. Jill Schultz

Dr. Zeke McKinney, who practices occupational and environmental medicine, is Plaintiff's primary treating physician. Pl.'s Opp'n to Summ. J. at 21.  Dr. McKinney evaluated Plaintiff in September 2019, shortly after the first alleged incident.  *Id.*  Dr. McKinney noted Plaintiff's symptoms and diagnosed him.  *Id.*  According to Plaintiff, Dr. McKinney "ruled out the possibility of a stroke." *Id.*  No expert report was provided, and Plaintiff intends for

---

[13]    It appears that Dr. Scholz submitted an expert report in *Vuksanovich* that was an earlier iteration of the manuscript submitted here.  During his deposition in *Vuksanovich*, he explained that he spent a lot of time on his "report" in that case and "would like to get more out of it than just an expert opinion."  Dr. Scholz *Vuksanovich* Dep. Tr., Dkt. 119-14 at 56.  His plan was to convert his "report" into a book.  *Id.*  The deposition in this case makes clear that, as planned, Dr. Scholz's "report" from *Vuksanovich*, as amended in the run up to him submitting a "report" in this case, will soon be released as a book.  Dr. Scholz *Busch* Dep. Tr., Dkt. 119-13 at 41–42; *see also* Dr. Scholz's Book's Table of Contents, Dkt. 122-41.

Dr. McKinney to testify based on his "medical records and reports," which were produced during discovery. Pl.'s Expert Disclosures, Dkt. 119-1 at 4.

Dr. Jill Schultz is an ophthalmologist who treated Plaintiff throughout 2019 and 2020. Pl.'s Opp'n to Summ. J. at 22. She diagnosed Plaintiff and prescribed him corrective lenses. *Id.* No expert report was provided for Dr. Schultz, and Plaintiff intends to have her testify based on her "medical records and/or reports" provided during discovery. Pl.'s Expert Disclosures, Dkt. 119-1 at 5.

Drs. McKinney and Schultz were initially disclosed by Plaintiff as expert medical witnesses. *Id.* at 4–5.[14] Plaintiff, now, however, appears to be offering them as treating physicians (a different category of expert witnesses). *See* Pl.'s Opp'n at 32.

Defendants argue that Plaintiff failed to properly disclose any causation opinions from Drs. McKinney and Schulz. Defs.' Mot. to Exclude the Ops. of Dr. Zeke McKinney & Dr. Jill Schultz ("McKinney/Schultz Mot."), Dkt. 115-1 at 11–14.[15] Defendants argue, in the alternative, that these doctors' opinions are inadmissible because they do not address general causation, reflect a reliable methodology for determining specific causation, or fit the facts of the case. *Id.* at 14–20. Defendants assert that Plaintiff's introduction of a diagnosis of "aerotoxic syndrome" is an attempt to improperly smuggle in an opinion on causation. *Id.* at 21–25.

Plaintiff responds that he intends to have Drs. McKinney and Schultz testify only "to the facts acquired, diagnoses made, and opinions 'formed during consultation.'" Pl.'s Opp'n at 32 (citing *Ali v. Connick*, No. 11-CV-5297 (NGG) (VMS), 2016 WL 3002403, at \*7 (E.D.N.Y.

---

[14]    Plaintiff noticed three other medical professionals (David A. Everson, PT; Lucy Kurtz, D.O.; and Phillip Sidell, M.D. (AME, FAA)), who are supposed to testify based on medical records and reports provided in discovery; Defendants have not moved to exclude their testimony. *See* Pl.'s Expert Disclosures, Dkt. 119-1 at 5–6.

[15]    Defendants also assert that Dr. McKinney failed to appear at a noticed deposition. McKinney/Schultz Reply, Dkt. 133 at 2.

May 23, 2016)).  Plaintiff requests that, even if the Court places "limitations on the treating physician's [*sic*] ability to testify about engine fumes and the effects they have on those who inhale them, the court should nonetheless allow the treating physicians to testify to the diagnoses they reached."  *Id.* at 33.

Treating physicians occupy a unique role in the expert witness landscape.  They must be disclosed under Fed. R. Civ. P. 26(a), but they may testify without providing expert reports.  *See Smith v. Fricke*, 635 F. Supp. 3d 152, 162 (N.D.N.Y. 2022) (quoting Fed. R. Civ. P. 26(a)(2)(B)) ("A party seeking to use a treating physician who will present an expert opinion as an expert does not, however, need to provide a written expert report under Rule 26(a)(2)(B) because treating physicians are not 'retained or specially employed to provide expert testimony in the case.'").  The required disclosure concerning such witnesses' opinions, while less comprehensive than an expert report, must still state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  *Id.* (citing Fed. R. Civ. P. 26(a)(2)(C)).

The testimony of treating physicians is also subject to various limitations.  Treating physicians may testify regarding "information [they] acquired through observation of the Plaintiff in [their] role as a treating physician."  *Id.* (*citing Mercado v. Dep't of Corr.*, No. 3:16-CV-01622, 2019 WL 625697, at *4 (D. Conn. Feb. 14, 2019)).  This can include severity, permanency, and even causation.  *Manganiello v. Agostini*, No. 07-CV-3644 (HB), 2008 WL 5159776, at *12 (S.D.N.Y. Dec. 9, 2008).  These opinions, however, must still be within the physician's area of expertise and be reliable.  *See Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 182 (E.D.N.Y. 2013); *see also N.K. by Bruestle-Kumra v. Abbott Labs.*, No. 14-CV-4875, 2017 WL 2241507, at *8, (E.D.N.Y. May 22, 2017) ("[W]hen [a] treating physician seeks to render an opinion on causation, that opinion is subject to the same standards of scientific reliability that

govern the expert opinions of physicians hired solely for the purposes of litigation.")  Treating physicians may not testify to outside sources, such as medical reports from other doctors.  *See Barack v. Am. Honda Motor Co., Inc.*, 293 F.R.D. 106, 109 (D. Conn. 2013).

As treating physicians, Drs. McKinney and Schultz may testify only to the observations and opinions each formed during the course of his or her treatment of Plaintiff.  They may explain their treatment notes that have been disclosed.  They may not be asked about broader opinions or "opine on any information provided by another doctor."  *Id.*  Because they are qualified as treating physicians and not experts, they may not testify "in rebuttal" to medical examinations performed by other physicians.  *Id.*; *see also* Pl.'s Expert Disclosures, Dkt. 119-1 at 4–6.

Opinions on causation must be appropriately supported by a reliable process.  If, under the circumstances, an expert would not be able to testify to causation, a treating physician may not either.

With that background, the Court has examined the records of Dr. McKinney.  *See* Dr. McKinney's Records, Dkt. 128-5.  These cannot be the basis for a causation opinion.  Although his records walk through a symptom evaluation tool, they defer neurocognitive testing.  *Id.* at 3–4.  The records do not explicitly mention a differential diagnosis or, despite Plaintiff's representation to the contrary, Pl.'s Opp'n to Summ. J. at 21, rule out the possibility of a stroke.  Dr. McKinney's Records, Dkt. 128-5 at 3–4.  They emphasize the consistency of his symptoms with aerotoxic syndrome, emphasizing the temporospatial association, but they fall short of reliably establishing causation.  *Id.* at 5.  There are no records before the Court for Dr. Schultz.  Plaintiff, therefore, has not furnished any documents that would allow the Court to conclude that Drs. McKinney or Schultz may testify to causation; any such opinions from those witnesses must be excluded.

Accordingly, those witnesses may not reference the diagnosis of "aerotoxic syndrome," which necessarily involves causation. *See Kaganovich v. McDonough*, 547 F. Supp. 3d 248, 276 (E.D.N.Y. 2021) (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("The treating physician veers into expert territory where the causal link would not be obvious to jurors, including in cases 'where an injury has multiple potential etiologies.'")).[16]  Given the highly prejudicial value of such testimony and its non-existent probative value given the physicians' lack of expertise, it would also run afoul of Fed. R. Evid. 403.  Dr. McKinney may testify that he diagnosed Plaintiff with an "acute brain injury," but he may not use the phrase "aerotoxic syndrome" and he may not link the brain injury to "exposure to an irritant volatile organic compound (most likely tricresyl phosphate)."  Pl.'s Opp'n to Summ. J. at 21.  Dr. Schultz may testify that she diagnosed Plaintiff with "convergence insufficiency" and contraction of the right field of vision; subjected him to "substantial" testing and rehabilitation therapy; and prescribed him corrective lenses.  Pl.'s Opp'n to Summ. J. at 13, 22.  She may not, however, opine that his eye problem was "causally related to the fume exposure."  *Id.*

For the foregoing reasons, Defendants' Motion to Exclude the Opinions of Dr. Zeke McKinney and Dr. Jill Schultz is GRANTED IN PART and DENIED IN PART.

## CONCLUSION

Defendants' Motion to Exclude the Opinions of Dr. Zeke McKinney and Dr. Jill Schultz is GRANTED IN PART and DENIED IN PART.  Per the guidelines above, Drs. Zeke McKinney and Jill Schultz may testify only as treating physicians, and they may not testify to causation.  Defendants' Motion to Exclude the Opinions of Dr. Susan Michaelis is DENIED as

---

[16]    Plaintiff's experts may not flout this ruling by using other phrasing that causally ties the toxin exposure to the injury, such as toxic encephalopathy.  *See* Pl.'s Opp'n to Summ. J. at 24 (equating "toxic encephalopathy" with "aerotoxic syndrome").

moot.  Defendants' Motions to Exclude the Opinions of Judith Anderson, Dr. Charles Howard, and Dr. Dieter Scholz are GRANTED.  The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 111–115.

The Clerk of Court is respectfully directed to file this Opinion & Order under seal.  The parties filed their motions and exhibits provisionally under seal because "they discuss sensitive information, including Plaintiff's medical information and Airbus's sensitive commercial information."  Letter, Dkt. 141 at 4.  For any part of this Opinion & Order to remain under seal, redactions must overcome the presumption of public access.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  **Not later than Friday, April 3, 2026**, the parties must jointly show cause why any portion of this Opinion & Order should remain under seal and submit a version to the Court reflecting the proposed redactions.

The parties are directed to meet and confer and, by **not later than Monday, April 13, 2026**, submit a joint letter proposing next steps, including a briefing schedule for summary judgment, if applicable.

**SO ORDERED.**

Date:  **March 13, 2026**
      **New York, NY**

                                **VALERIE CAPRONI**
                               **United States District Judge**